# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
Civil Action No.: 3:25-cv-00442

| | |
|---|---|
| EUKELA LITTLE, | ) |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT and DEMAND FOR JURY TRIAL** |
| INFINITY LIVE, LLC, | ) |
| Defendant. | ) |

Plaintiff Eukela Little ("Little"), by and through counsel, brings this action for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, as amended, *et seq.*, against Defendant Infinity Live, LLC ("Infinity Live"). In addition, Little brings claims under North Carolina common law related to Infinity Live's wrongful discharge in violation of the public policy of the State of North Carolina.

## THE PARTIES

1. Little is an adult individual who is a resident of Charlotte, North Carolina.

2. Infinity Live is a domestic limited liability company registered and in good standing in the State of North Carolina, with its principal place of business located at 7004-b Smith Corners Blvd, Charlotte, North Carolina 28269.

## JURISDICTION AND VENUE

3. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 over the subject matter of the claims brought for unlawful discrimination under Title VII of the Civil Rights Act of 1964.

4. Little's wrongful discharge in violation of public policy, negligent supervision, and negligent retention claims are based on the law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of facts giving rise to Little's Title VII claim.

5. This Court has personal jurisdiction because Infinity Live conducts substantial business operations in Mecklenburg County, North Carolina, which is located within this judicial district.

6. Venue is proper in this judicial district because Infinity Live has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Mecklenburg County located within this judicial district.

## COVERAGE ALLEGATIONS

7. Infinity Live is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

8. At all relevant times, Little was an "employee" covered by the protections of Title VII within the meaning of 42 U.S.C. § 2000e(f).

9. Infinity Live employed at least fifteen (15) employees at all relevant times.

10. Little satisfied her obligation to exhaust her administrative remedies by timely filing a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation based on sex. On March 31, 2025, the EEOC issued a Notice of Suit Rights and Little timely brings this action within ninety (90) days of her receipt thereof.

## FACTUAL ALLEGATIONS

11. Infinity Live operates a premier restaurant venue in Charlotte, North Carolina that specializes in high-quality service and hospitality.

12. Little began her employment with Infinity Live on or about October 8, 2023, and held the Bartender role.

13. Throughout her employment, Little met or exceeded Infinity Live's legitimate employment expectations as evidenced by no disciplinary actions prior to the unlawful termination described below.

14. On or about October 22, 2023, Lorenzo Fulton ("Fulton"), Infinity Live's Cook, began a pattern of sexual harassment directed at Little. Fulton messaged Little via Sling and told her that Tatyana Rutledge, another Bartender for Infinity Live, Fulton, and Little "would have a good time" if they had a threesome.

15. A little bit later during her shift, Fulton showed Little his phone and he displayed a folder of videos depicting Fulton having sexual intercourse with other females. Little turned away and declined to watch any other videos Fulton attempted to show her.

16. Later that evening, Little was sitting at the bar by a hookah. Fulton snuck up behind her and began hitting on her. Little unequivocally told Fulton she does not sleep with co-workers. Fulton responded stating, "If you give me that pussy today, I'll quit tomorrow." Fulton then walked away.

17. A little while later, Fulton approached Little and told her that he "could take care of [her]" and that he owned his own catering company, insinuating that he could quit working for Infinity Live. Fulton then told Little that Infinity Live's management would do anything to keep him around. Fulton then told Little he wanted to "lick [her] back."

18. After the end of Little's scheduled shift, and at 1:00 a.m. on October 23, 2023, Fulton texted Little asking "WYD," which stands for "what you doing?" Urban Dictionary

3

provides the following definition for a "WYD" text message: "A text sent by a dude who wants you to come over for sex." Little replied to Fulton, stating:

> Hey Renzo, imma be honest in saying I really don't have any interest in taking this anywhere. My only priority at infinity is to work and make money. That's all[.]

19. Fulton did not reply to Little's text.

20. Later in the day on October 23, 2023, Little complained to LaTesha Farrington ("Farrington"), Infinity Live's General Manager, about Fulton's inappropriate sexual comments and harassment. Little texted Farrington the following;

> Hi Teesha!! I Hope you're well. I'm reaching out and asking that I please stay anonymous but I'd like to formally let a manager know that Lorenzo and the comments he's made to me in the past 2 shifts or so are extremely inappropriate and uncomfortable to me. In the past two days, he's made comments regarding "having me shaking" and "wanting to lick my back" and has even shown a folder of personal sex films to which I declined to see. I'm not necessarily asking at this moment for anything to be done. I've officially and formally let him know I have no interest. Regardless, however you and the rest of management choose to address this, I ask that I please stay anonymous.

21. Farrington replied:

> I am so sorry you experienced that. We don't want you [to] be uncomfortable at all. I will most definitely have to address this with the rest of management and make sure we have a conversation immediately. I will make sure you remain anonymous.
>
> Can you tell me when/where it happened? What time? So sorry. The more info we have the better. Not to share with him but for management.

22. Little complied with Farrington's request and provided her with more details about when and where Fulton sexually harassed her.

23. From October 30, 2023, until November 27, 2023, Fulton repeatedly told Little "don't tell nobody" whenever they interacted. On November 28, 2023, Little confronted Fulton and asked him "why do you keeping saying that?" Fulton replied, "It's an inside joke."

24. On November 29, 2023, Little again complained to Farrington about Fulton's inappropriate comments and behavior.

25. On December 6, 2023, Little complained to Keisha Smalls, Infinity Live's Bar Manager, and Beji Dross ("Dross"), Infinity Live's Manager, about Fulton's inappropriate sexual comments and actions. Dross instructed Litte to prepare an affidavit describing Fulton's actions and comments, which she submitted to him on December 7, 2023.

26. On December 10, 2023, Farrington informed Little that she discussed Fulton's comments with him and he explained that he "didn't know [his] comments made anyone uncomfortable." This apparently was a justifiable explanation because Farrington informed Little that Infinity Live would not discipline Fulton for his comments or behavior. Instead, Farrington asked Little if she "could continue working with [Fulton]." Little told Farrington she could continue working with him if he stopped making inappropriate sexual comments to her. Farrington responded by telling Little, "If you can't work with [Fulton], you will need to work on his days off." Little told Farrington she needed more time to process this ultimatum and would provide a response later.

27. At 7:30 p.m. that evening, Little texted Farrington:

Hi Teesha! I had two questions form while reflecting over our conversation:

-what would the alternating scheduling, if implemented, look like? Which days would be available for me to work?

-what ultimately led to the decision to keep him despite having multiple complaints under his name?

I am processing and just needed a moment to take everything in before formulating my thoughts.

28. Farrington did not respond to Little's text.

5

29. On December 11, 2023, Farrington met with Little and told her she could not speak about Infinity Live's decision not to discipline Fulton but stated "at some point, things become 'he say, she say.'" Little then informed Farrington she wanted to continue working her normal shifts.

30. Upon information and belief, Infinity Live did not discipline Fulton in any way for his inappropriate sexual comments and actions directed at Little.

31. Upon information and belief, Little is not the only female employee who complained about Fulton's inappropriate sexual comments and actions and Infinity Live did not take any remedial actions to address the other female employee's complaints.

32. On or about December 18, 2023, Farrington and Maksim Paziuk ("Paziuk"), Infinity Live's Manager, had a scheduled one-on-one meeting with Little. During the meeting, Farrington informed Little her employment with Infinity Live was being terminated because she "needed more confidence." Little asked for examples of when she exhibited "low confidence." Farrington told Little that on December 6, 2023, she was "visibly frustrated and should have taken accountability for not being able to keep up." However, on December 6, 2023, Farrington had understaffed the bar for the night, causing Little to be responsible for the customers and Farrington did not request any other staff members to come in to work.

33. On December 19, 2023, Little emailed Farrington asking for clarification about her termination. Farrington replied:

> While the NC doesn't require a reason for termination, our decision was based on your performance as a bartender here. In detail, the number of voids were high in comparison to the number of sales. Your sales overall were lower than your peers who have been here as long or less time than you. There were a few complaints from customers on different occasions when you were seemingly overwhelmed by the volume. However, you were very kind and receptive and we know that you will be very successful in the future. Please anticipate the funds returned to you by the end of this week.

Farrington's reference to returned funds was in response to Little's question about when she would receive her final paycheck. Infinity Live timely provided Little her final paycheck but failed to refund her for uniforms she purchased, and for which Infinity Live promised to refund.

34. Despite claiming that Little's sales were worse than similarly situated co-workers, the quantitative data shows that Little not only outperformed similarly situated co-workers but she also had a lower "void" ratio than other similarly situated co-workers.

35. Infinity Live's stated reason for termination is pretextual for unlawful discrimination and retaliation.

36. Infinity Live's actions were intentional, willful, wanton, and/or taken with reckless disregard to Little's rights as protected by state and federal law.

**FIRST CAUSE OF ACTION**
**(Violation of Title VII – Hostile Work Environment Based On Sex)**

37. Little realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

38. Title VII prohibits discrimination on the basis of sex, including maintaining a hostile work environment based on sex.

39. Infinity Live maintained a hostile work environment based on sex when it allowed Fulton to sexually harass Little. Despite Little complaining about Fulton's sexual harassment, Infinity Live ignored her complaints and failed to take any remedial action to stop Fulton from continuing to sexually harass Little. Instead, it retained Fulton and did not discipline him in any way.

40. Fulton's sexual harassment was unwelcomed, based on Little's sex, sufficiently severe and pervasive to alter Little's conditions of employment and created an abusive work environment, and was imputable to Infinity Live.

41. Infinity Live's violation of Title VII was intentional, willful, and/or undertaken in reckless disregard for Little's rights under Title VII.

42. As a proximate and foreseeable result of Infinity Live's conduct, Little has suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief from Infinity Live.

**SECOND CAUSE OF ACTION**
**(Violation of Title VII – Retaliation)**

43. Little realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

44. Little engaged in activity protected by Title VII in that she complained about conduct she, in good faith, violated Title VII by reporting Fulton's sexual harassment to Infinity Live.

45. Infinity Live retaliated against Little by terminating her employment because she engaged in activity protected by Title VII.

46. Infinity Live's violation of Title VII was intentional, willful, and/or undertaken in reckless disregard for Little's rights under Title VII.

47. As a proximate and foreseeable result of Infinity Live's retaliatory conduct, Little has suffered lost back and future wages, benefits, expenses, and other damages which she seeks from Infinity Live.

48. As a proximate and foreseeable result of Infinity Live's retaliatory conduct, Little has suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief from Infinity Live.

## THIRD CAUSE OF ACTION
**(Wrongful Discharge in Violation of Public Policy)**

49. The public policy of the State of North Carolina as set forth in the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C.G.S. § 143-422.1, prohibits employers from discriminating against employees on the basis of their sex. Plaintiff is female therefore, a member of a protected class. This is specifically established in § 143-422.2.

50. Infinity Live violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1 by terminating Little, a member of the protected class, on the basis of her sex.

51. As a proximate and foreseeable result of Infinity Live's conduct, Little has suffered lost back and future wages, benefits, expenses, and other damages which she seeks from Infinity Live.

52. Infinity Live's actions were done maliciously, willfully, or wantonly, or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Infinity Live's conduct, Little is entitled to recover punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Little demands the following relief:

a) Order Infinity Live to pay to Little compensatory damages;

b) Order Infinity Live to pay to Little punitive damages;

c) Order Infinity Live to pay to Little all attorneys' fees, litigation expenses, and costs incurred as a result of bringing this action;

d) Order Infinity Live to pay to Little pre- and post-judgment interest on all sums recoverable; and

e) Order Infinity Live to provide Little with all other legal and/or equitable relief to which she is entitled.

## JURY TRIAL DEMAND

Little demands a trial by jury for all issues of fact.

Respectfully submitted,

/s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, North Carolina 28277
Telephone:(704) 612-0038
E-Mail: phil@gibbonslg.com
corey@gibbonslg.com

*Attorneys for Plaintiff*